IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SAMAN RAJAEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-13-2517 |
| | § | |
| DESIGN TECH HOMES, LTD and | § | |
| DESIGN TECH HOMES OF TEXAS, LLC, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants' Motion for Summary Judgment (Document No. 25). After carefully considering the motion, response, reply, and applicable law, the Court concludes as follows.

I. Background

Plaintiff Saman Rajaee ("Plaintiff") is a Houston resident who has worked in the residential home construction industry for over twelve years, collecting numerous business contacts in the process.[1] In January 2012, Defendants Design Tech Homes, Ltd. and Design Tech Homes of Texas, LLC (collectively, "Defendants") hired Plaintiff to provide sales and marketing for them.[2] Plaintiff's position required him to have constant access to email to be able

---

[1] Document No. 39, ex. C ¶ 2 (Pl.'s Decl.).

[2] Id., ex. C ¶ 3.

to "answer customer requirements and be available as needed."[3] Defendants did not provide Plaintiff with a cell phone or smart device.[4] Plaintiff instead used his personal smart device, an Apple iPhone 4 (the "iPhone"), to conduct his work for Defendants.[5] Plaintiff's iPhone was connected to Defendants' Microsoft Exchange Server, allowing Plaintiff remotely to access the email, contact manager, and calendar provided by Defendants.[6]

On or about February 2, 2013, Plaintiff notified Defendants that he would be resigning in two weeks, and Defendants immediately terminated Plaintiff.[7] A few days later, Defendants' Network Administrator, Alvaro Sandoval ("Sandoval"), remotely wiped

---

[3] Id., ex. C ¶ 4.

[4] Id., ex. C ¶ 5.

[5] Id., ex. C ¶ 7.

[6] Id. The parties dispute the origin of this connection. Plaintiff testifies that Defendants "encouraged [their] employees, such as me, to use their own personal smart device," that he did not have the technical knowledge to connect his smart phone device to a Microsoft Exchange Server, and that "someone acting on behalf of [Defendants]" connected Plaintiff's iPhone to Defendants' server. Id., ex. C ¶¶ 5, 7. Defendants state that Plaintiff connected his iPhone without authorization, citing the declaration testimony of their Network Administrator, Alvaro Sandoval, who asserted that he himself did not connect the iPhone and was not aware of the connection until the day of Plaintiff's resignation. See Document No. 25 at 2-3; Document No. 26-1 at 2 of 109.

[7] Document No. 39, ex. C ¶ 8.

Plaintiff's iPhone, restoring it to factory settings and deleting all the data--both personal and work-related--on the iPhone.[8]

Plaintiff sued Defendants, alleging that their actions caused him to lose "more than 600 business contacts collected during the course of his career, family contacts (many of which are located overseas and some are related to family business), family photos, business records, irreplaceable business and personal photos and videos and numerous passwords."[9] Plaintiff alleges violations of the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act, misappropriation of confidential information, violation of the Texas Theft Liability Act, negligence, and conversion.[10] Defendants move for summary judgment.[11]

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that

---

[8] Id., ex. A at 43:2-44:6, 49:7-14; id., ex. C ¶ 9; id., ex. D.

[9] Document No. 9 ¶ 16 (2d Am. Compl.).

[10] Document No. 9.

[11] Document No. 25.

3

summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-

4

Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

III. Analysis

1. Violation of the Electronic Communications Privacy Act

Plaintiff alleges that "Defendants accessed Plaintiff's smart device without authorization and willfully destroyed the Plaintiff's communications stored on his smart device in violation of 18 USC §2701(a)(1)."[12] Title 18 U.S.C. 2701 is part of the Stored Communications Act, which Congress passed as part of the Electronic Communications Privacy Act ("ECPA") to protect potential intrusions on individual privacy not addressed by the Fourth Amendment. See Garcia v. City of Laredo, Tex., 702 F.3d 788, 791 (5th Cir. 2012). Section 2701(a)(1) provides that whoever "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby

---

[12] Document No. 9 ¶ 20. In his Response to Defendants' Motion for Summary Judgment, Plaintiff waives this claim by failing to defend it. See Document No. 39.

5

obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section." 18 U.S.C. § 2701(a)(1). Assuming that a cell phone could be considered a "facility" under the Stored Communications Act, the Fifth Circuit has held that "information that an individual stores to his hard drive or cell phone is not in electronic storage under the statute." Garcia, 702 F.3d at 793. Accordingly, Plaintiff's personal data that he stored on his iPhone is not protected by Section 2701, and his ECPA claim is dismissed.

2. Violation of the Computer Fraud and Abuse Act

Plaintiff alleges that "Defendants accessed Plaintiff's computer and caused the loss of Plaintiff's records causing economic damages valued at more than $5,000," in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.[13] Although the CFAA is a criminal statute, Section 1030(g) provides a private right of action "for [a]ny person who suffers damage or loss by reason of a violation of this section." 18 U.S.C. § 1030(g); Fiber Sys. Int'l, Inc. v. Roehrs, 470 F.3d 1150, 1156 (5th Cir. 2006). "A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in . . . subsection (c)(4)(A)(i)." 18 U.S.C. § 1030(g). The only factor

---

[13] Document No. 9 ¶ 24.

that is potentially relevant in this case is "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value." Id. § 1030(c)(4)(A)(i)(I).[14]

Defendants argue that Plaintiff's CFAA claim fails as a matter of law because Plaintiff has produced no evidence of any loss cognizable under the CFAA that aggregates to at least $5,000.[15] Plaintiff responds that "[t]he present case relates to intentional *deletion* of data and documents and [Plaintiff] has sufficiently pled facts supporting a CFAA interruption of service and loss. Nor [have Defendants] proven that [Plaintiff's] losses are less than $5,000."[16]

Because Plaintiff bears the ultimate burden of proving loss at trial, Defendants may move for summary judgment "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2554 (1986). Defendants are not required to produce evidence negating Plaintiff's claim. Id. at 2553. Once Defendants have argued that Plaintiff has no evidence of loss

---

[14] The statute's other factors that may give rise to a civil cause of action involve medical records, physical injury, threats to public health or safety, and damage affecting United States Government computers used in furtherance of the administration of justice, national defense, or national security. See 18 U.S.C. § 1030(c)(4)(A)(i).

[15] Document No. 25 at 13-15; Document No. 40 at 4-5.

[16] Document No. 39 at 17 (emphasis in original).

within the meaning of the statute, it is Plaintiff's burden to produce evidence--not merely to rely on his pleadings--in order to demonstrate the existence of a genuine issue of material fact. *See* id. at 2552 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); Modrowski v. Pigatto, 712 F.3d 1166, 1170 (7th Cir. 2013) (on summary judgment motion involving CFAA claim, "once the defendants pointed out the gap that they believed existed in [plaintiff's] case, he was obliged to point to evidence that, if believed by the trier of fact, would be sufficient to show that his loss did in fact exceed $5,000").

Although Plaintiff does not argue that he has produced evidence of statutory loss, he does cite--albeit in a footnote and without explanation--to paragraph 11 of his Declaration, in which he describes the losses he suffered as a result of Defendants' deletion of his personal data.[17] Plaintiff testifies that he lost: (1) pictures of his personal home rehabilitation project, which decreased the value of the remodel by at least $50,000; (2) pictures and video of family, friends, and his dogs, which he values at $3,500; (3) all cell phone contacts after 2009, which he

---

[17] *See* id. at 17 n.90; Document No. 39, ex. C ¶ 11.

8

values at over $50,000 based on his diminished employability; (4) all of Plaintiff's text messages, which he values at $1,000; and (5) all of his notes and email accounts, which he values at $600.[18]

Defendants reply that none of these qualify as "loss" under the CFAA.[19] The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." Id. § 1030(e)(11). "The term 'loss' encompasses only two types of harm: costs to investigate and respond to an offense, and costs incurred because of a service interruption." Alliantgroup, L.P. v. Feingold, 803 F. Supp. 2d 610, 630 (S.D. Tex. 2011) (Rosenthal, J.) (citing Quantlab Techs. Ltd. (BVI) v. Godlevsky, 719 F. Supp. 2d 766, 776-77 (S.D. Tex. 2010) (Ellison, J.); Nexans Wires S.A. v. Sark-USA, Inc., 319 F. Supp. 2d 468, 472-78 (S.D.N.Y. 2004), aff'd 166 F. App'x. 559, 562-63 (2d Cir. 2006) (holding $10 million in lost profits caused by misappropriation of confidential data was not recoverable under the CFAA, which permits recovery of lost revenue only when connected to an "interruption of service.")); see also Resdev, LLC

---

[18] Document No. 39, ex. C ¶ 11.

[19] Document No. 40 at 4-5.

v. Lot Builders Ass'n, Inc., 6:04-CV-1374ORL31DAB, 2005 WL 1924743, at *4 (M.D. Fla. Aug. 10, 2005) ("By use of the term 'cost' and its listing potential injuries directly associated with, or with addressing, an unauthorized-computer-access event, the CFAA plainly enumerates a narrow grouping of 'loss' distinct from--and thus excluding--the far greater range of losses that could flow from a violation of the CFAA.").

Plaintiff has not produced evidence of any costs he incurred to investigate or respond to the deletion of his data, nor do the losses and damages for which he does produce evidence arise from an "interruption of service." See M-I LLC v. Stelly, 733 F. Supp. 2d 759, 780 (S.D. Tex. 2010) (Ellison, J.) ("case law has consistently interpreted the loss provision to encompass only the costs incurred as a result of investigating or remedying damage to a computer, or costs incurred because the computer's service was interrupted"); Alliantgroup, 803 F. Supp. 2d at 630 (granting summary judgment on CFAA claim where plaintiff "does not allege an interruption of services as a result of [defendant's] actions, or any costs incurred to investigate and respond to an interruptions or any service interruption"); Clinton Plumbing & Heating of Trenton, Inc. v. Ciaccio, CIV. 09-2751, 2010 WL 4224473, at *6 (E.D. Pa. Oct. 22, 2010) ("Various courts have interpreted 'loss' to mean the remedial costs of investigating a computer for damage, remedying damage done, and costs incurred while the computer is inoperable.")

(citations omitted); Nexans Wires, 319 F. Supp. 2d at 477, aff'd, 166 F. App'x 559 ("Therefore, if [plaintiffs] had lost revenue because the computer systems . . . were down, that would seem to be the type of lost revenue contemplated by the statute."); see also Frees, Inc. v. McMillian, CIV.A. 05-1979, 2007 WL 2264457, at *2 (W.D. La. Aug. 6, 2007) (although defendants allegedly deleted data from plaintiff's computer, plaintiff "did not suffer an interruption of service"). Accordingly, Plaintiff has not offered evidence sufficient to raise a genuine issue of material fact that he sustained $5,000 in cognizable "loss" under the CFAA, and Plaintiff's CFAA claim is dismissed.

3. Supplemental Jurisdiction

This Court's original jurisdiction is based solely on federal question jurisdiction. Plaintiff's remaining causes of action--for misappropriation of confidential information, violation of the Texas Theft Liability Act, negligence, and conversion--all arise under and allege serious issues of Texas law. Accordingly, the Court in its discretion declines to exercise supplemental jurisdiction over these remaining state law claims. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."); Enochs v. Lampasas Cnty., 641 F.3d 155, 161 (5th Cir. 2011) ("Our

general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.").

IV. Order

For the foregoing reasons, it is

ORDERED that Defendants Design Tech Homes, Ltd. and Design Tech Homes of Texas, LLC's Motion for Summary Judgment (Document No. 25) is GRANTED IN PART, and Plaintiff Saman Rajaee's claims for violations of the Electronic Communications Privacy Act and the Computer Fraud and Abuse Act are DISMISSED WITH PREJUDICE. It is further

ORDERED that Plaintiff Saman Rajaee's remaining state law claims for misappropriation of confidential information, violation of the Texas Theft Liability Act, negligence, and conversion are DISMISSED WITHOUT PREJUDICE.

<u>Plaintiff is reminded that the period of limitations to file their state claims in state court is tolled for a period of thirty (30) days after the claims are dismissed unless state law provides for a longer tolling period. 28 U.S.C. § 1367(d)</u>.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 11TH day of November, 2014.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE